J. Seth Moore
State Bar No. 24027522
smoore@condontobin.com
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone:   (214) 265-3852
Facsimile:    (214) 691-6311

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **Pinnacle Drilling Services, LLC, et al. [1],** | § § | **Case No. 22-50037** |
| Debtors. | § § | **(Jointly Administered)** |
| | § § § | |

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF PINNACLE
DRILLING SERVICES, LLC AND PINNACLE SWD TEXAS, LLC'S
JOINT PLAN OF LIQUIDATION
MAY 22, 2023**

**TO:**   **Creditors and Equity Security Holders of Pinnacle Drilling Services, LLC and
Pinnacle SWD Texas, LLC (the "Debtors")**

Contained in the packet of documents that has been sent to you by Pinnacle Drilling Services, LLC ("Pinnacle Drilling") and Pinnacle SWD Texas, LLC ("Pinnacle SWD") (collectively, the "Debtors") are the Disclosure Statement of the Debtors (the "Disclosure Statement"), the Joint Plan of Liquidation (the "Plan"), the Ballot for Voting on the Plan (the "Ballot") and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof. Please read all of these materials carefully.

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the Order Directing Joint Administration of Chapter 11 Cases [Docket No. 28]. The Debtors' mailing address is 4450 Ocean Drive, Corpus Christi, Texas 78412.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

Please note that in order for your vote to be counted, you must 1) include your name and address, 2) fill in, date,  and sign the enclosed Ballot and 3) return it to the attorney for the Debtors by the date and time specified on the Ballot.

## ARTICLE I - INTRODUCTORY STATEMENT

The Debtors have filed contemporaneous herewith in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division (the "Bankruptcy Court") their Joint Plan of Liquidation in the above-captioned case (the "Bankruptcy Case").  Pursuant to the terms of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") this Disclosure Statement has been approved by the Bankruptcy Court. Such approval is required by statute and will not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

Any terms not defined herein shall have the meaning set forth in Article II of the Plan.

### A.  DISCLAIMERS

**ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED BY THE DEBTORS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. DEBTORS ARE UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE.**

**THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTORS OR THEIR AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED. THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY DEBTORS' COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC. NEITHER THE DEBTORS NOR THEIR COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.**

**AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE**

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

**TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN THE DEBTORS.**

**IF ANY IMPAIRED CLASS VOTES TO ACCEPT THE PLAN, BUT NOT ALL CLASSES ACCEPT THE PLAN, THE DEBTORS WILL SEEK CONFIRMATION UNDER THE CRAM DOWN PROVISION OF § 1129(B) OF THE BANKRUPTCY CODE AND HEREBY GIVES NOTICE OF INTENT TO INVOKE THE CRAM DOWN PROVISIONS OF § 1129(B) IN THAT EVENT.**

## B.  BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, § 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect from a debtor any claims which arose prior to the bankruptcy filing or otherwise to interfere with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and equity security holders in the formulation of a plan of reorganization or liquidation. For the first 120 days after the filing of a Chapter 11 bankruptcy petition, the debtor is the only party who may file a plan in the bankruptcy case, which is generally referred to as "exclusivity." Once exclusivity ends, any party in interest may file a plan. The legal requirements for court approval, called "confirmation," of a plan are discussed on page 4 of this Disclosure Statement.

## C.  THIS DISCLOSURE STATEMENT

<u>Why You Have Received This Disclosure Statement</u>.  You have received this Disclosure Statement because the Debtors have proposed a Plan with the Bankruptcy Court in order to satisfy their debts and provide for a liquidation of the Debtors' business. The Bankruptcy Court approved this Disclosure Statement on _____. A copy of the Plan is enclosed with the materials that you have received. This Disclosure Statement, as required by 11 U.S.C. § 1125, is being provided to all known Creditors and other parties-in-interest whose claims are impaired in connection with the solicitation and acceptance of the Plan proposed by the Debtors.

<u>Purpose of this Disclosure Statement</u>.  The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the Holders of Claims against the Debtors to make an informed judgment in exercising its right either to accept or reject the Plan.

<u>Purpose of the Plan</u>.  The purpose of the Debtors' Plan is to provide a mechanism for the liquidation of the Debtors' assets and for the payment of the Debtors' Creditors. The Plan was developed by the Debtors. The Debtors believe that the Plan is more attractive than other alternatives, such as conversion to Chapter 7 liquidation or dismissal of this Bankruptcy Case. The alternatives to the Plan are more fully discussed on page 14 of this Disclosure Statement. EACH CREDITOR IS URGED TO READ THE PLAN PRIOR TO VOTING.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

<u>Bankruptcy Court Approval of this Disclosure Statement</u>. The Bankruptcy Court approved this Disclosure Statement as containing information of a kind in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of the Classes being solicited to make an informed judgment about the Plan.

<u>Sources of Information</u>. The information contained in this Disclosure Statement has been submitted by the Debtors unless specifically stated to be from other sources. Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtors have made every effort to retain the meaning of such other instruments or the portions transposed, the Debtors urge that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.

<u>Only Authorized Disclosure</u>. No representations concerning the Plan are authorized by the Debtors or the Bankruptcy Court other than as set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and such representations or inducements should be reported to counsel for the Debtors, who shall deliver such information to the Bankruptcy Court.

<u>Voting on the Plan</u>. **YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT.** A Creditor or Interest Holder, in order to vote on the Plan, must have filed a proof of claim or interest on or before the Bar Date, unless the Debtors did not schedule the claim as disputed, liquidated or contingent. Any Creditor whose Claim is not scheduled as disputed, liquidated or contingent is, to the extent scheduled, deemed to have filed a Claim and, absent objection, such Claim is deemed allowed. A Creditor or Interest Holder may vote to accept or reject the Plan by filling out and mailing to counsel for the Debtors the Ballot which has been provided in this package of information.

In order for the Plan to be accepted by a class of Creditors, more than one half in number and at least two-thirds in amount of such class of Claims must vote to accept the Plan. Only those Claim Holders that actually vote are considered in the calculations. In order for the Plan to be accepted by Interest Holders, at least two-thirds in amount of interests must vote to accept the plan. Again, only voting Interest Holders are considered in the calculation. You are, therefore, urged to fill in, date, sign and promptly mail, email and/or fax the enclosed Ballot which has been furnished to you to the claims agent for the Debtors as follows:

| **If by First Class Mail Overnight Courier, Messenger, or Hand Delivery:** | **If by Electronic Mail:** |
| --- | --- |
| J. Seth Moore<br>Condon Tobin Sladek Thornton Nerenberg, PLLC<br>8080 Park Lane, Suite 700<br>Dallas, Texas 75231 | Ballots may also be delivered to J. Seth Moore by electronic mail sent to smoore@condontobin.com with "Pinnacle Vote" on the subject line.[1] |

---

[1] For any Ballot cast via electronic mail the format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard PDF file) and the received date and time in the Counsel's inbox will be used as the timestamp for receipt.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

**Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder.**

The Court has fixed _____, as the last date by which Ballots must be served on counsel for the Debtors. Except to the extent allowed by the Bankruptcy Court, Ballots that are received after such time will not be counted. Ballots of Holders of impaired Claims received pursuant to this solicitation and which are signed but are not expressly voted for acceptance or rejection of the Plan will be counted as Ballots for accepting the Plan. A Ballot accepting the Plan may not be revoked, except by order of the Bankruptcy Court.

## ARTICLE II – BACKGROUND OF THE DEBTORS

### A.  HISTORY OF THE DEBTORS

Pinnacle Drilling and Pinnacle SWD are Texas limited liability companies. Each entity was formed for the purpose of providing oilfield services. Pinnacle Drilling owns land in Gaines County, Texas and drilling rig equipment. Pinnacle SWD owns salt water disposal leases in Dawson County, Texas.

The Debtors were each organized for the purpose of providing oilfield services. Pinnacle SWD was formed for the purpose of servicing the operations pertaining to the facilities and employees of Pinnacle Drilling. Total revenues were approximately 1.6 million USD for the year 2016, followed by 2.5 million for the year 2017, and another 3.2 million for 2018. Unfortunately, the years 2019 and 2020 saw a dramatic drop with the plunge in oil prices and the covid pandemic.

During this same time period, there was a significant project entered into with RLB Land Company ("RLB"). A dispute arose at the site, and eventually led to litigation. This litigation has lasted a total of 4.5 years and is currently on-going.  Other creditors, including various taxing authorities, have also initiated litigation.

The covid pandemic and associated oil market correction not only impacted the Debtors' businesses, but the businesses of many of their customers.  The Debtors' accounts receivable became harder and harder to collect.  Many of the Debtors' customers went out of business or filed for bankruptcy themselves.  These significant stresses, coupled with the litigation proceedings left the Debtors with no choice but to seek bankruptcy protection.

On March 31, 2022 (the "Petition Date") the Debtors filed their voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pinnacle Drilling and Pinnacle SWD, filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code on March 31, 2022.

### Management

Prior to the Petition Date, Robert Mathis served as the managing member of each of the Debtors. Mathis continues to serve in that role.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

**Debtors' Ownership**

As of the Petition Date, Pinnacle Drilling and Pinnacle SWD were each owned as follows:

**Pinnacle Drilling Services, LLC –** Robert Mathis, Manuel Jay Phillips, Charles George Pond and Reinhart Holdings, LLC

**Pinnacle SWD Texas, LLC –** Robert Mathis and Manuel Jay Phillips

## A.   ASSETS AND LIABILITIES AT THE TIME OF THE FILING

The Debtors' Schedules reflecting the Debtors' estimations of their respective assets and liabilities as of the Petition Date will be provided with the Disclosure Statement Supplement (the "DS Supplement") which will be filed at least fourteen days prior to the hearing on approval of this Disclosure Statement. The following is a summary description of each of the Debtors' principal assets.

**Pinnacle Drilling –** Pinnacle Drilling owns approximately 10 acres of land in Gaines County, Texas as well as some drilling rig equipment. Pinnacle Drilling believes these assets, if sold pursuant to the Plan, will produce between $575,000.00 and $850,000.00 in proceeds. The total claims filed in the Pinnacle Drilling case are approximately $361,057.97.

**Pinnacle SWD –** Pinnacle SWD owns salt water disposal leases in Dawson County, Texas and some miscellaneous equipment. Pursuant to the Plan, Pinnacle SWD would sell all equipment an assume and assign saltwater disposal leases to Alpha Properties Texas, LLC ("Alpha") for $450,000. The total claims filed in the Pinnacle SWD case are approximately $1,108,678.25. Gaines County Appraisal District, TX filed a claim in the Pinnacle SWD case for $304,926.90. However, the Debtors believe that most, if not all of this claim, should have been asserted against Pinnacle Drilling based on the collateral Gaines County asserts a lien against, which is actually owned by Pinnacle Drilling. Debtors may have to assert objections to this proof of claim.

## B.   SIGNIFICANT EVENTS IN CHAPTER 11

Employment of Legal Counsel and other Professionals. On April 14, 2022, the Debtors sought to employ the law firm of Condon Tobin Sladek Thornton Nerenberg, PLLC as counsel for the Debtors [Docket No. 10]. On June 6, 2022, the Bankruptcy Court entered an order approving the employment of Condon Tobin Sladek Thornton Nerenberg, PLLC as counsel for the Debtors [Docket No. 29]. In connection with the Plan, Pinnacle Drilling will seek to employ Great American Global Partners, Inc. to sell its drilling rig equipment via auction. Pinnacle Drilling anticipates this sale will yield approximately $75,000.00 to $150,000.00 in proceeds which will be used to make payments to creditors under this Plan. Likewise, Pinnacle Drilling will seek to employ Edge Realty Capital Markets, LLC to sell its Real Property. Pinnacle Drilling anticipates this sale will yield between $500,000.00 and $700,000.00 in proceeds which will be used to make payments to creditors under this Plan.

Joint Administration. On April 14, 2022, Debtors filed their Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

Rules of Bankruptcy Procedure [Docket No. 9]. On June 6, 2022, the Bankruptcy Court entered an order directing joint administration of the Debtors' cases for procedural purposes only [Docket No. 28].

Initial § 341 Meeting of Creditors. On May 17, 2022, the initial meeting of creditors was held and concluded for the Debtors pursuant to 11 U.S.C. § 341.

Post-Petition Operations of Debtors. The Debtors' Monthly Operating Reports reflecting post-petition operations through April 2023 will be included in the DS Supplement and incorporated by reference herein. Generally, the Debtors have paid ordinary course operational expenses.

Marketing Debtors' Properties. Debtors engaged in extensive efforts to sell their properties. In the summer of 2022, the Debtors received a letter of interest that would have sold all of their assets to a strategic purchaser. The Debtors believe this transaction could have been worth up to one million dollars. However, that strategic purchaser was not able to move forward. The Debtors worked with multiple other potential purchasers in the following months, until a new letter of interest was received in the spring of 2023. The Debtors believe that transaction could have been worth up to $800,000.00. However, less than one month ago Debtors received word that the purchaser had lost one of its investors and would therefore not be able to close the purchaser with the Debtors. The Debtors have since been in overdrive seeing if they could rekindle a deal with one or more of the parties who had previously expressed interest in the Debtors' assets. This resulted in an offer from Alpha to purchaser the assets of Pinnacle SWD for $450,000.00.

## ARTICLE III - SUMMARY OF THE PLAN

### A. OVERVIEW OF THE PLAN

THE FOLLOWING DISCUSSION IS A GENERAL OVERVIEW OF THE PLAN ONLY. IT IS NOT INTENDED TO MODIFY THE TERMS OF THE PLAN IN ANY WAY. THE PLAN IS ENCLOSED WITH THIS DISCLOSURE STATEMENT. CREDITORS ARE URGED TO READ THE PLAN IN ITS ENTIRETY IN DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN.

The Plan provides for a liquidation of all liabilities owed by the Debtors, as described herein.

### B. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan classifies and treats various classes of Creditors of the Debtors' Estate. The following is a summary of the classification and treatment of Creditors' Claims under the Plan. The Debtors reserve all rights to object to any and all Claims, Liens, and interests filed or asserted against the Debtors or the Property notwithstanding any discussion or treatment herein or in the Plan. For the purpose of satisfaction of all Claims against and Equity Interests in the Debtors, the Claims and Equity Interests are divided into the following classes:

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

## ALLOWED ADMINISTRATIVE CLAIMS

On or before the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims that have been awarded by the Court but which were unpaid as of the Effective Date. On or prior to the Administrative Expense Claim Bar Date, each Professional required to do so shall File with the Court a final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Objections to applications of Professional final fee applications must be filed and served on the Plan Administrator and the professionals to whose application the objections are addressed no later than twenty-four (24) days after filing of the relevant final fee application. The Liquidated Debtors shall pay any outstanding amounts owed to a Professional within ten (10) days after entry of a Final Order with respect to such Professional's final fee application.

Holders of Administrative Expense Claims (including, without limitation, holders of Professional Claims or Post-Petition Tax Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable Administrative Expense Claim Bar Date or Post-Petition Tax Claim Bar Date are forever barred from asserting such Claims against the Debtors, the Liquidated Debtors, or any of their respective property.

Notwithstanding any other provision of the Plan, all fees, expenses, and other compensation arising after the Effective Date and due and payable to professionals retained by the Liquidated Debtors shall be paid by the Liquidated Debtors.

## ALLOWED TAX PRIORITY CLAIMS

Each holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, payment in Cash of such holder's Pro-Rata share of all Distributions under the Plan to be shared Pro-Rata with holders of all Allowed Priority Tax Claims until the payment in full of all Allowed Priority Tax Claims.

To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law. Provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not be allowed to assess or attempt to collect such penalty from the Debtors, the Liquidated Debtors or their Estates, or their respective property.

## US TRUSTEE'S FEES

The Liquidated Debtors shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Reorganized Debtors shall continue to pay quarterly fees as they accrue until a Final Decree is entered and the Chapter 11 Case is closed. The Reorganized Debtors shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Case remains open.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

**Secured Claim of Small Business Administration:** (Class 1.1.A) - The Class 1.1.A claim of the Small Business Administration shall be treated as a fully Secured Claim against Pinnacle SWD Texas, LLC. In full and complete settlement, release and discharge of and in exchange for

such Class 1.1.A Claim: (i) on the Effective Date and as part of the Closing, the SBA shall receive from the proceeds of the Sale of the Pinnacle SWD Property payment in full of the claim as recited above. The proceeds from the Sale of the Pinnacle SWD Property are projected to be more than sufficient to pay the Class 1.1.A Claim in full.

**Secured Claims of Governmental Authorities:** (Class 1.2.A and 1.2.B) – The Class 1.2.A and 1.2.B Claims shall consist of the Secured Claims filed by Dawson County, Texas and Gaines County, Texas, or their assigns (the "Governmental Authorities") filed against the Pinnacle SWD Property and the Pinnacle Drilling Property. The Class 1.2.A and 1.2.B Claims shall be treated as fully secured. The Class 1.2.A and 1.2.B Claims shall be paid their pro rata share of the respective sale proceeds at Closing. To the extent that the respective sale proceeds are not sufficient to pay the Class 1.2.A and 1.2.B Claims in full, such Governmental Authorities shall be a holder of a Class 2.A or 2.B Unsecured Deficiency Claim with respect to such deficiency.

The Class 1.2.A and 1.2.B Secured Claims of Governmental Authorities are impaired under the Plan.

**General Unsecured Claims:** (Class 2.A and Class 2.B) – Class 2.A and 2.B General Unsecured Claims each consist of Allowed Unsecured Claims against the respective Debtor held by creditors who are not insiders or affiliates of the Debtors.

As to Pinnacle SWD Creditors holding Allowed Class 2.A Claims, they will share pro rata in any assets remaining after payment of Claims in Classes 1.1.A and 1.2.A. Such payments will be made as soon as reasonably practicable after all the Claims in the foregoing Classes are paid in full; provided, however, that notwithstanding the Debtors' rights to request estimation as set forth in Section 11.3 below, no distribution to Class 2.A or 3.A. shall be made until the complete and final resolution by Final Order of all Class 2.A Claims, including Undetermined Claims (which complete and final resolution does not include estimation).

As to Pinnacle Drilling Creditors holding Allowed Class 2.B Claims, they will share pro rata in any assets remaining after payment of Claims in Class 1.2.B. Such payments will be made as soon as reasonably practicable after all the Claims in the foregoing Classes are paid in full; provided, however, that notwithstanding the Debtors' rights to request estimation as set forth in Section 11.3 below, no distribution to Class 2.B or 3.B. shall be made until the complete and final resolution by Final Order of all Class 2.B Claims, including Undetermined Claims (which complete and final resolution does not include estimation).

The Class 2.A and 2.B General Unsecured Claims are impaired under the Plan.

**Equity Interest Holders:** (Class 3.A and 3.B) – The Class 3.A Equity Interest Holders consist of the equity interests held by the members of Pinnacle SWD Texas, LLC and by any holder of a Claim which is ultimately recharacterized as equity. The Class 3.A Equity Interest Holders' equity percentage equaling the total amount of such interests in each of the Debtors shall be determined as of the date of distribution to Class 3.A, and to the extent Classes 1.1.A,

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

1.2.A, and 2.A are paid in full.

The Class 3.B Equity Interest Holders consist of the equity interests held by the members of Pinnacle Drilling Services, and by any holder of a Claim which is ultimately recharacterized

as equity. The Class 3.B Equity Interest Holders' equity percentage equaling the total amount of such interests in each of the Debtors shall be determined as of the date of distribution to Class 3.B, and to the extent Classes 1.2.B, and 2.B are paid in full.

The Class 3.A and 3.B Equity Interest Holders are impaired under the Plan.

## C.  IMPLEMENTATION OF THE PLAN

Sale of the Debtors' Properties.  The Plan contemplates the sale of substantially all of each Debtor's assets (the "Assets") to a third party (the "Sale") pursuant to Bankruptcy Code Sections 363(b) and (f) and 1123(b)(4).  The sale of the Pinnacle SWD Property will be made to Alpha Properties Texas, LLC for the sum of $450,000.00 in cash.  The Debtors seek authority, in connection with Confirmation of the Plan, to sell the Pinnacle Pinnacle Drilling Property to the bidder submitting the highest and best offer, free and clear of any liens, claims, encumbrances, or other interests. The Confirmation Order shall contain specific authority for the sale of the Debtors' assets free and clear of any liens, claims, encumbrances or other interests.  A copy of proposed transaction documents with Alpha will be provided with the DS Supplement.

Contemporaneously with the later of (a) the Closing or (b) the Effective Date, the Purchasers shall transfer to the applicable Debtor the proceeds of the Sales to be used to satisfy Administrative and Priority claims, followed by the Class 1.1 SBA claim and the Class 1.2 Secured Governmental Authority Claims, with remaining funds to be distributed as set forth in the claim treatment plan. Any other assets of the Debtors not transferred to the Purchasers at Closing, including all Avoidance Actions, shall vest in the Reorganized Debtors for the benefit of holders of Allowed Claims against the Debtors' estate.

Pinnacle Drilling is concurrently herewith filing a motion asking the Court to approve the employment of Great American Global Partners, Inc. ("Great American") to sell its drilling rig equipment via auction. Pinnacle Drilling anticipates this sale will yield approximately $75,000.00 to $150,000.00 in proceeds which will be used to make payments to creditors under this Plan.  A copy of the Great American motion will be included with the DS Supplement.

Likewise, Pinnacle Drilling is filing concurrently herewith a motion, asking the Court to approve the employment of Edge Realty Capital Markets, LLC ("Edge") to sell its Real Property. Pinnacle Drilling anticipates this sale will yield between $500,000.00 and $700,000.00 in proceeds which will be used to make payments to creditors under this Plan.  A copy of the Edge motion will be included with the DS Supplement.

After the Effective Date, the Plan and all remaining property of the Estates shall be managed under the direction of the Liquidated Debtors as provided by the terms of the Plan. In the performance of their duties hereunder, the Liquidated Debtors shall have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan or

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

otherwise as may be reasonably necessary, including, without limitation, the filing of any necessary tax returns.

The Confirmation Order shall provide the Liquidated Debtors with express authority to convey, transfer, and assign any and all property of the Estates consistent with the terms of the

Plan and to take all actions necessary to effectuate same. The Liquidated Debtors shall have sole responsibility for making Distributions under the Plan and pursuing Causes of Action (including Chapter 5 Causes of Action) on behalf of the Debtors and their Estates. The Liquidated Debtors shall also have standing to monitor and seek to enforce the performance of obligations under the Plan and the performance of other provisions of the Plan.

As soon as is practicable after the Effective Date, the Liquidated Debtors shall file an application with the Clerk of the Court requesting the entry of a Final Decree closing the Cases; *provided, however*, the Liquidated Debtors shall not file an application for Final Decree until and unless the conditions to the Plan becoming effective as set forth herein have been fully met, all pending Causes of Action have been resolved by Final Order of a court of competent jurisdiction or abandoned, and objections to Disputed Claims have been resolved by Final Order of the Court.

Continued Corporate Existence. The Liquidated Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, in which they were formed, for the purposes of satisfying their obligations under the Plan and the winding down of their affairs. On the Effective Date or any time thereafter, the Liquidated Debtors may take such action as permitted by applicable law, including, but not limited to, the dissolution of the Liquidated Debtors and the closure of the Liquidated Debtors' Chapter 11 Cases.

Retained Causes of Action. Debtors are currently involved in multiple lawsuits. Those lawsuits are listed in the Debtors' Schedules, and copies of the Debtors' pleadings in those lawsuits will be included in the DS Supplement.

## D.  EXECUTORY CONTRACTS AND LEASES

General Rejection of Executory Contracts: All executory contracts and unexpired leases of the Debtors (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly assumed on or before thirty (30) days after the Confirmation Date or not otherwise specifically treated in this Plan, via supplement hereto, or in the Confirmation Order shall be deemed to have been rejected on the Confirmation Date. The Debtors will include a list of contracts/leases to be assumed and assigned with DS Supplement. Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtors, or the Debtors-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtors, or the Debtors-in-Possession have any liability thereunder. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving rejection under § 365 of the Bankruptcy Code as of the Effective Date.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

Cure of Defaults: Unless otherwise provided for in the Plan, the purchaser of the Debtor's assets to which the Executory Contract is related shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of §§ 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the purchaser may pay such amount as may be agreed upon between the purchaser and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Liquidated Debtor files, within sixty (60) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Liquidated Debtors on the later of: (i) ten (10) Business Days after the expiration of the sixty day (60) period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

Claims for Damages: Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Liquidated Debtors such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 2.1 Claims, unless such claims are held by an insider of the Debtor. Any Claim not filed within such time will be forever barred from assertion against the Debtors or their Estates.

## E.  RESOLUTION OF DISPUTED CLAIMS

Only Allowed Claims will be paid by Debtors according to the Plan.  An Allowed Claim is any Claim against the Debtors for which a proof of claim was timely and properly filed or is deemed to have been timely and properly filed because the Debtors have or hereafter do not list such Claim on their schedules as unliquidated, disputed or contingent.

Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Liquidated Debtors may file with the Court objections to Claims and Interests.

If an objection is filed to a proof of claim ("Undetermined Claim"), then an Allowed Claim shall be the amount of the Claim allowed by Order of the Bankruptcy Court. Thereafter, only upon entry of an Order determining the amount of the Allowed Claim and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan. Such distributions shall be made in the manner provided for by the Plan and the terms of any Final Order of the Court with respect to such

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

Allowed Claim. In the event that Debtors make distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the Order allowing such Claim and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

Unless and until an Undetermined Claim becomes an Allowed Claim, no Creditor holding such a Claim shall have any Claim against the distribution held by the Debtors and/or Liquidated Debtors with respect to such Claim. Nothing in the Plan or this Disclosure Statement or any other documents associated with the Plan or Disclosure Statement, limits, alters, abrogates or divests the rights of any creditor or party-in-interest to file objections to any filed or scheduled Claims in these Cases as permitted by 11 U.S.C. § 502, to seek equitable subordination pursuant to 11 U.S.C. § 510 to any filed or scheduled Claims in these Cases, or to seek recharacterization of any scheduled or filed Claims in these Cases; provided, however, that nothing in the foregoing clause shall confer any rights to any parties that do not already have them under the Bankruptcy Code.

Effect of Bar Date:  In accordance with Federal Rule of Bankruptcy Procedure 3003(c), any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed claims, and did not file a proof of claim before the Bar Date, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution and such claim shall be barred from assertion against the Debtors.

Estimation of Claims: The Debtors or the Liquidated Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtors or the Liquidated Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidated Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated subsequently and compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Nothing herein limits Claimants' objections or defenses to any request to estimate.

## F.  CAUSES OF ACTION

Retention of Causes of Action:  All Claims and Causes of Action owned by the Debtors, Causes of Action that could have been brought by a Creditor on behalf of the Debtors, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan shall be retained by the Liquidated Debtors and may be pursued for the benefit of the Creditors, with the proceeds to be paid pursuant to the terms of the Plan or to the extent all obligations under the Plan are satisfied, retained by the Liquidated Debtors. Such Claims and Causes of Action include, but are not limited to, Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. The Liquidated Debtors shall have the exclusive right to settle or compromise all such Causes of Action. The Debtors expressly reserve, on behalf of the Liquidated Debtors,

all rights and remedies with respect to preferential or otherwise voidable transfers. The Debtors specifically reserve their rights regarding transfers described within their Statements of Financial Affairs and any exhibits and amendments thereto.

## ARTICLE IV - CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN

Conditions to Confirmation.  Confirmation of the Plan cannot occur unless each of the following conditions precedent has occurred:

1. The Bankruptcy Court shall have approved the Disclosure Statement; and
2. The Confirmation Order is entered by the Bankruptcy Court.

## ARTICLE V - MODIFICATION OF THE PLAN

Section 1127(a) of the Bankruptcy Code permits the Debtors to amend or modify a plan at any time prior to confirmation. Post-confirmation modifications of a plan are allowed under § 1127(b), if the proposed modification is offered before a plan has been substantially consummated or pursuant to an article of the confirmed plan authorizing the intended modification. Debtors reserve the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event the Debtors propose to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity security interest holder who has previously accepted the Plan. If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, the Debtors intend to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

## ARTICLE VI - CONSIDERATIONS IN VOTING ON THE PLAN

### A.  ALTERNATIVES TO THE PLAN

Although the Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful.  The Debtors believe the proposed Plan to be in the best interests of Creditors and the Debtors and does not favor any alternative to the proposed Plan. In arriving at that conclusion, Debtors assess the alternatives as follows:

Chapter 7 Liquidation Analysis. The Debtors could convert the cases to Chapter 7 and allow a bankruptcy trustee to be appointed to liquidate and distribute assets.  In the event that the Court does not confirm a plan in this case, conversion to Chapter 7 will ultimately result. Debtors believe this alternative to be unsatisfactory because the Unsecured Creditors would likely receive no money in the event that the Debtors' assets are liquidated under Chapter 7 of the Bankruptcy Code. The Debtors' Liquidation Statement will be attached to the DS Supplement and incorporated herein by reference.

Dismissal of the Case. Dismissal of the Chapter 11 Cases would most likely lead to the same unsatisfactory result as Chapter 7 liquidation.

The Debtors have attempted to set forth alternatives to the proposed Plan. However, the Debtors must caution Creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan fails to be accepted. If you believe one of the alternatives is preferable to the Plan and you wish to urge it upon the Court, you should consult counsel.

## B. SPECIFIC CONSIDERATIONS IN VOTING

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

While the Plan provides for certain payments at Confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is allowed. A Claim will be allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Court at a regular, evidentiary hearing and allowed in full or in part or disallowed. While the Debtors bear the principal responsibility for Claim objections, any interested party, including Creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

## C. DISCLOSURES REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires disclosure of certain facts:

1) There are no payments made or promises of the kind specified in § 1129(a)(4) of the Bankruptcy Code which have not been disclosed to the Court.

2) Counsel to the Debtors have advised the Debtors that the Debtors will require legal services in connection with this case after confirmation which will require reimbursement. Debtors may continue to use Condon Tobin Sladek Thornton Nerenberg, as counsel after confirmation.

## E. DESCRIPTION OF MANAGEMENT AND CONTROL PERSONS OF DEBTORS

Robert Mathis is the managing member of each of the Debtors. He will continue in that role following confirmation.

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

## ARTICLE VII - PROVISIONS GOVERNING DISTRIBUTION

<u>Claims.</u> Claims are defined in the Plan. The Plan is intended to deal with all Claims against the Debtors' Estates of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Bankruptcy Court pursuant to § 502(a) of the Bankruptcy Code; however, only those Claims Allowed pursuant to § 502(a) of the Bankruptcy Code will be entitled to and receive payment under the Plan.

<u>Compliance with Plan.</u> Any Person, including a Creditor, which has not, within the time provided in the Plan, performed any act required in the Plan or in the Confirmation Order, shall not be entitled to participate in any distribution under the Plan.

<u>Provisions Covering Distributions.</u> All payments required by the Plan shall be made by the Debtors, or the Liquidated Debtors, its successor, assign or designee. Payments to be made in cash pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, such mode of payment shall be at the sole discretion of the Debtors or the Liquidated Debtors.

Distributions and deliveries to Holders of an Allowed Claim shall be made to the Holder at the address set forth on the latest-filed proof of claim filed by such Holder or at the address listed on the Debtors' Schedules of such Holder if no proof of claim is filed. If any Holder's distribution is returned as undeliverable, the Debtors or the Liquidated Debtors shall hold the distribution until notified of such Holder's new address or the first anniversary of the Effective Date occurs, at which time the undelivered distribution shall revert and become the property of the Liquidated Debtors and the Claim shall be discharged and forever barred.

Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance shall be made directly to Debtors at the Notice Address(es) listed herein in Article IX by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of such checks shall be discharged and forever barred.

## ARTICLE VIII - RETENTION OF JURISDICTION

<u>Purposes.</u> Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction in the following matters after Confirmation of the Plan:

i.      to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

ii.     to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with section 503(b) of the Bankruptcy Code or this Plan;

iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

assignment, as the case may be, of unexpired leases to which the Debtors are a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv.   to hear and determine any and all actions initiated by the Debtors or the Liquidated Debtors, whether by motion, complaint or otherwise;

v.   to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.   to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii.   to ensure that the distributions are accomplished in accordance with the provisions of this Plan;

viii.   to allow, disallow, determine, liquidate or estimate any Claim or Interest and to enter or enforce any order requiring the filing of any such Claim or Interest before a particular date;

ix.   to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x.   to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii.   to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order, including, without limitation, all such actions brought by the Liquidated Debtors in this Court;

xiii.   to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

xiv.   to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

xv.     to determine any avoidance actions brought pursuant to the provisions of
the Bankruptcy Code; and

xvi.    to enter a Final Order and final decree closing the Chapter 11 cases.

<u>Exclusive Jurisdiction</u>:  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of the Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

<u>Abstention</u>:  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including the matters set forth in Article VIII or Article IX of the Plan, such abstention shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

<u>Certain Rights Unaffected</u>.  Except as otherwise provided in the Plan, any rights or obligations which the Debtors' Creditors may have amongst them as to their respective claims or the relative priority or subordination thereof are unaffected.

<u>Binding Effect</u>.  As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, Liquidated Debtors, the Holders of the Claims, and their respective successors and assigns.

<u>Discharge of Claims</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtors or any of its assets or properties to the extent permitted by § 1141 of the Bankruptcy Code.  Upon the Effective Date, all existing Claims against the Debtors shall be deemed to be discharged and all Holders of Claims shall be precluded from asserting against the Debtors' assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

<u>Discharge of Debtors.</u>  Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors or any of their assets or properties.  Upon the Effective Date, the Debtors shall be deemed discharged and released to the extent permitted by § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors. Pursuant to § 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the

Debtors or the property of the Debtors, to the extent it relates to a Claim discharged.

Exculpations. Debtors' professionals shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. On the Effective Date, and without the need for further action, Russell Perry (the Debtors' "Independent Director") the Plan and Confirmation Order shall constitute a release and discharge of all actions, known or unknown, that any person may have or be able to assert against the Independent Director solely for any actions or inactions taken by him as a result of or arising from the Bankruptcy Case. The Independent Director shall be released and terminated from his role as Debtors' Independent Director as of the Effective Date.

Injunctive Relief. Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to § 105 of the Bankruptcy Code from taking any action to correct or enforce any Claim directly or indirectly against the Debtors' assets or properties in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NEITHER THE GUARANTORS, INSIDERS, OFFICERS, DIRECTORS, EMPLOYEES NOR THE INTEREST HOLDERS OF THE DEBTORS SHALL BE DISCHARGED AND RELEASED FROM LIABILITY, IF ANY, FOR CLAIMS AND DEBTS ARISING UNDER OR IN CONNECTION WITH THE DEBTORS OR THESE CHAPTER 11 CASES AND/OR OTHERWISE ADDRESSED AND/OR TREATED IN THE PLAN. HOWEVER, ABSENT FURTHER COURT ORDER UPON NOTICE AND HEARING, THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM OR DEBT ADDRESSED IN THE PLAN, SO LONG AS THE PLAN IS NOT IN DEFAULT, SHALL BE THE PLAN AND ALL PARTIES CLASSIFIED IN AND UNDER ARTICLES 4 AND 5 OF THE PLAN ARE ENJOINED FROM TAKING ANY ACTION INCONSISTENT HEREWITH, INCLUDING, BUT NOT LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST ANY GUARANTOR, INSIDERS, OFFICER, DIRECTOR, EMPLOYEE OR INTEREST HOLDER. TO THE EXTENT NECESSARY, ANY APPLICABLE STATUTE OF LIMITATIONS AGAINST COLLECTION FROM ANY THIRD PARTY IS SPECIFICALLY TOLLED FROM THE PERIOD OF TIME FROM THE PETITION DATE UNTIL THE DATE UPON WHICH THE DEBTORS FAIL TO CURE ANY WRITTEN NOTICE OF DEFAULT AS SET FORTH IN THE PLAN AND/OR IN ANY APPLICABLE LOAN DOCUMENTS.**

Notices. All notices, requests or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

**Debtors:**

Pinnacle Drilling Services, LLC
4450 Ocean Drive
Corpus Christi, TX 78412

Pinnacle SWD Texas, LLC
4450 Ocean Drive
Corpus Christi, TX 78412

**Debtors' Counsel:**

J. Seth Moore
Condon Tobin Sladek Thornton Nerenberg, PLLC
8080 Park Lane, Suite 700
Dallas, TX 75231
(214) 265-3852 Telephone
(214) 691-6311 Telecopier
Email: smoore@condontobin.com

All notices and request to holders of Claims and Interests shall be sent to them at the address listed on the last-filed proof of claim and if no proof of claim is filed, at the address listed in the Debtors' Schedules.

## ARTICLE X - CONCLUSION

The Debtors respectfully submit that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest of creditors" and "feasibility" requirements and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan. The Debtors believe that the Plan "is fair and equitable" and "does not discriminate unfairly." Additionally, the Debtors believe that the Plan has been proposed in good faith.

The Debtors respectfully request that this Disclosure Statement be approved for circulation to the creditors of the Debtors and that they be permitted to solicit votes for acceptance of the Plan.

Dated: May 22, 2023

**Pinnacle Drilling Services, LLC**

*/s/ Robert Mathis*
Robert Mathis, Managing Member

**Pinnacle SWD Texas, LLC**

*/s/ Robert Mathis*
Robert Mathis, Managing Member

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**

**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**

*/s/ J. Seth Moore*
Aaron Z. Tobin
Texas State Bar No. 24028045
J. Seth Moore
Texas State Bar No. 24027522
8080 Park Lane, Suite 700
Dallas, Texas 75231
atobin@condontobin.com
smoore@condontobin.com

**COUNSEL FOR DEBTORS**

**JOINT DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**